NATIONAL TREASURY EMPLOYEES UNION, Appellant,

v.

**Richard M. NIXON, Individually and as President of the United States.**

**No. 74–1891.**

United States Court of Appeals, District of Columbia Circuit.

Argued 11 June 1975.

Decided 20 Oct. 1975.

As Amended Nov. 14, 1975.

318

Michael H. Gottesman, Washington, D. C., for appellant. George H. Cohen and Robert M. Tobias, Washington, D. C., were on the brief for appellant.

Eloise E. Davies, Atty., Dept. of Justice, with whom Carla A. Hills, Asst. Atty. Gen., at the time the brief was filed, Earl J. Silbert, U. S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, were on the brief for appellee.

Before LEVENTHAL and WILKEY, Circuit Judges and MERHIGE,* United States District Judge for the Eastern District of Virginia.

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

WILKEY, Circuit Judge:

Appellant National Treasury Employees Union (NTEU) successfully prosecuted a claim on behalf of its members that former President Nixon denied a 5.14% pay increase effective as of October 1972, contrary to the Federal Pay Comparability Act (FPCA).[1] The President implemented the decision of this court upholding appellant's claim through Executive Orders 11777 and 11778, which adjusted pay rates not only for members of NTEU but for all federal employees subject to the FPCA. As a result some 3½ million employees ultimately received retroactive salary payments ranging from $69 to more than $450.

On remand NTEU filed an application for award of counsel fees and litigation expenses. The District Court denied the application, stating that recovery was not warranted under either the "private attorney-general" exception or the "common-benefit" exception (sometimes referred to as the "common fund" exception) to the general American Rule, which bars such awards. We hold that the "common benefit" exception is applicable on the facts of this case. We therefore reverse the judgment of the District Court and remand for further determinations as discussed herein.

I. *Jurisdictional Issues*

■ Initially, appellee has presented a series of jurisdictional arguments to appellant's application for attorney's fees and expenses. First, it is argued that the application is barred by 28 U.S.C. § 2412 which provides, in pertinent part:

Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in Section 1920 of this title *but not including the fees and expenses of attorneys* may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity . . ..

The Government apparently concedes that the statute is not directly applicable because the request is for reimbursement from benefitted employees and not from the public treasury. However, it does take the position that the statute must also be read to bar the imposition on the Government of the expense of collecting the fees from its employees.[2] The short answer to this argument is that such expenses simply are not "fees and expenses of attorneys" within the meaning of the statute and thus are not barred by Section 2412.

■ Anticipating our position on this issue, appellee argues in addition that such expenses are not "costs", as specifically defined by Section 1920 and, as a result, there has been no waiver of sovereign immunity with respect to them. We find no support for the application of sovereign immunity to the facts of this case. The core of the doctrine seeks to protect the public fisc against unconsented claims for monetary relief. We agree with appellee that such claims need not be against the United States *eo nomine* to be barred by the doctrine as long as the judgment "would expend itself on the public treasury or domain . . .."[3] However, the mere imposition of an expense upon the Government is not generally enough to invoke the doctrine.

---

1. *National Treasury Employees Union v. Nixon*, 160 U.S.App.D.C. 321, 492 F.2d 587 (1974).

2. This argument and the one which follows it assume that the cost of collecting the attorney's fees would be borne by the Government and not by the employees. The question as to who will bear the expense of collection will be before the District Court on remand. Although ordinarily the beneficiaries would be expected to bear those expenses, the District Court might decide that a portion of the expense should be borne by the Government because the refusal to permit the deduction initially has resulted in much greater costs of collection.

3. *Land v. Dollar*, 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947).

■ The Supreme Court has acknowledged this distinction in the analogous context of immunity under the Eleventh Amendment. In *Edelman v. Jordan*[4] the Court held that the Eleventh Amendment barred the retroactive award of benefits under the Aid to the Aged, Blind, and Disabled program. The Court, however, noted that sovereign immunity did not bar prospective decrees despite the fact that such decrees were likely to have a significant "impact on state treasuries," as state officials become required henceforth to spend more "money from the state treasury." (Pp. 667–68, 94 S.Ct. 1347.) "Such an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex Parte Young* [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)]. . . ."[5] Similarly we believe that sovereign immunity does not bar the award of attorney's fees and litigation expenses against private parties merely because some incidental expense might be imposed upon the Government by such an award.[6]

Finally, it is argued that the District Court lacks subject matter jurisdiction to enter an appropriate decree granting plaintiff relief. Appellee contends that because jurisdiction to entertain the substantive claim was under the mandamus statute, 28 U.S.C. § 1361, the granting of appellant's application must satisfy the standards for grant of mandamus.

■ This argument confuses subject matter jurisdiction with the substantive law governing appellant's application. The District Court has the power to entertain the application for attorney's fees and expenses because it has subject matter jurisdiction over the main claim. The award of attorney's fees is not a separate claim for relief requiring an independent jurisdictional base, but rather is an additional equitable remedy which under appropriate conditions can be awarded to the prevailing party. Equitable considerations, the substance of which are substantially different from the law governing the grant of mandamus relief, govern the award of attorney's fees.

Having considered and rejected appellee's jurisdictional arguments, we turn our attention to the merits of the application.

## II. The "Common Benefit" Exception

At least since the Supreme Court's opinion in *Trustees v. Greenough*[7] the federal courts have permitted "a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorney's fees, from the fund or property itself or directly from the other parties enjoying the benefit."[8] An exception has been made to the general rule of non-recovery in this class of cases because of the perceived injustice of permitting third parties to benefit from the actions of another without sharing in the expenses incurred in securing or guaranteeing the benefit. The District Court's ruling requires us to consider the precise scope of the "common benefit" exception.

■ Initially, appellee argues that the doctrine is inapplicable because "there is literally no common fund." This argument is based on the conceded fact that the retroactive salary payments were paid out of several different appropriations of funds. In our view, it is a mere technicality that Congress chose to fund these retroactive salary payments in such a way that agencies were required to draw upon previously appropri-

---

4. 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

5. 415 U.S. at 668, 94 S.Ct. at 1358.

6. Equitable considerations, however, may bar such an award. *See* 172 U.S.App.D.C. p. ——, 521 F.2d p. 323.

7. 105 U.S. 527, 26 L.Ed. 1157 (1882).

8. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975).

ated funds before drawing upon the funds made available by the Second Supplemental Appropriations Act, 1974.[9] The entire sum paid to federal employees is the "common fund" or "common benefit" to which the request for contribution is applicable, government accounting procedures notwithstanding.

■ Appellee's second contention relates to the fact that the District Court has no control over the "common fund." The Supreme Court has clearly indicated that such control is not necessary for reimbursement. "Although the earliest cases recognizing a right to reimbursement involved litigation that had produced or preserved a 'common fund' for the benefit of a group, nothing in these cases indicates that the suit must actually bring money into the court as a prerequisite to the court's power to order reimbursement of expenses."[10] In *Mills v. Electric Auto-Lite*,[11] for example, the Court held that minority shareholders should be reimbursed for the costs of establishing a violation of the securities laws even though the suit might never produce a monetary recovery. Control over funds or assets is not a necessary condition for the application of the doctrine.

■ Professor Dawson in a recent law review article noted: "The common fund doctrine emerged in situations where the interests of litigants and outsiders were so closely interlocked that success in the litigation inevitably brought evident and measurable gains to outsiders."[12] This is precisely such a case. Millions of federal employees tangibly benefited directly because plaintiff persevered in this litigation. Where the members of a distinct class of persons, such as these federal employees, derive a significant sum of money from the efforts of a few, it is only just to permit the few to spread their reasonable ex-

penses to all members of the class. On the facts of this case NTEU has presented a prima facie case for reimbursement of its attorney's fees and litigation expenses and we therefore reverse the judgment of the District Court.

### III. *On Remand*

Although plaintiff has made a prima facie case for recovery, there are three tasks which remain for the District Court on remand. First, the District Court must consider whether a deduction for attorney's fees from future paychecks would be prohibited by statute. Second, it must determine the amount of attorney's fees and/or litigation expenses to be awarded. Finally, it should consider whether the expense of collecting those amounts is so disproportionate to the recovery that it would be inequitable to impose that expense on the employees.

Because the retroactive salary adjustment necessitated by our prior ruling has already been paid over to its intended recipients, appellant has suggested that its reimbursement come out of a future salary payment. Appellee, in turn, suggested at oral argument that such a procedure might violate a federal statute. The question was not addressed in the briefs and was not focused upon in oral argument, so we deem it advisable that the issue be decided by the District Court in the first instance. It is possible that there may be other methods by which reimbursement could be made to plaintiff. On remand, the relative merits of such other methods should be considered in light of statutory prohibitions, if any, and the expense and ease of administration. We are assuming for purposes of this opinion that the attorney's fees and/or litigation expenses involved will be available from future salaries either through direct payment by the Federal Government into the court (and cor-

9. Pub.L. 93–305, Title III, 88 Stat. 230 (8 June 1974).

10. *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392, 90 S.Ct. 616, 625, 24 L.Ed.2d 593 (1970).

11. 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

12. Dawson, *Lawyers and Involuntary Clients: Attorney Fees From Funds*, 87. Harv.L.Rev. 1597, 1652 (1974).

responding deductions from salary checks) or some meaningful equivalent.[13]

The District Court must then determine the amount of attorney's fees and litigation expenses that should be awarded to plaintiff and to plaintiff's attorneys. It must be remembered that

> there are two possible "causes of action" that may be urged as the basis for award of attorney's fees. One of these "causes" belongs to the plaintiff who brought the underlying suit. His claim is that by instituting the suit he has performed a service benefiting other class members. The reasonable value of that service is measured by the expenses incurred by the plaintiff on behalf of the class.

\* \* \* \* \* \*

> The second "cause of action" for award of attorney's fees under the equitable fund doctrine belongs to the attorney. The attorney's claim is that his conduct of the suit conferred a benefit on all the class members, that one or more class members has agreed by contract to pay for the benefit the attorney conferred upon him, and that the remaining class members should pay what the court determines to be the reasonable value of the services benefiting them.[14]

■ The general approach to be followed by the District Court in determining the reasonable value of an attorney's

services was set out in our opinion in *Pete v. UMWAWRF.*[15] The inquiry begins with a determination of the time devoted to the litigation. This figure in turn is multiplied by an hourly rate for each attorney's work component, a rate which presumably would take into account the attorney's legal reputation and experience. The resulting figure represents an important starting point because it "provides the only objective basis for valuing an attorney's services." [16] In turn, this figure may be adjusted upward if there was a risk of non-compensation or partial compensation.[17] In addition, the fees may be adjusted upward or downward on the basis of the quality of work performed as judged by the District Court.[18]

■ Having just set out the general principles governing fee awards, we must note that it is quite possible that the contractual rate of compensation between NTEU and their attorneys (whether outside counsel or employees) is the reasonable value of their services. If the District Court so determines, the claims of plaintiff's attorneys would be entirely subsumed by the "expenses claim" of plaintiff leaving nothing for the attorneys to recover. The fee would go to the attorneys, who would then reimburse their client.[19] On the other hand, "[i]t may well be that counsel serve organizations like appellants for compensation below that obtainable in

---

13. We are aware that a provision for reimbursement from future salaries may mean an escape for some persons, *e. g.,* those who left government employment after receiving the retroactive salary payment. The fact that a court of equity cannot achieve perfect justice does not mean it should forsake pursuit of substantial justice.

14. *Lindy Bros. Builders, Inc., of Phila. v. American Radiator and Stand. Sanitary Corp.,* 487 F.2d 161 (3rd Cir. 1973) [hereinafter *Lindy Bros.*].

15. 171 U.S.App.D.C. 1, 517 F.2d 1275 (1975).

16. *Lindy Bros., supra* at 167.

17. *Pete v. UMWAWRF,* 171 U.S.App.D.C. at 16, 517 F.2d at 1290.

18. A judge is presumed knowledgeable as to the fees charged by attorneys in general and as to the quality of legal work presented to him by particular attorneys; these presumptions obviate the need for expert testimony such as might establish the value of services rendered by doctors or engineers. Although expert opinion evidence is not required in awarding attorneys' fees, where the facts to be weighed in light of the judge's expertise are disputed, an evidentiary hearing is required.

*Lindy Bros., supra* at 169.

19. *Wilderness Society v. Morton,* 161 U.S.App. D.C. 446, 457, 495 F.2d 1026, 1037 (1974), *reversed on other grounds, sub nom. Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

the market because they believe the organizations further public interest." [20] If such was the case here the District Court should award such additional amounts as are necessary to bring the compensation up to reasonable value.

Finally, the District Court should consider whether the expenses that will be incurred in collecting the amount found to be owing is so disproportionate to the recovery that it would be inequitable to impose that expense on appellee. The attractiveness of the Government's position in raising the question of administrative cost is diminished considerably by the recognizable fact that there would have been only slight cost—if the Government had seen the justice of permitting plaintiff's counsel to obtain attorney's fees. The argument that the Government could not have permitted a deduction from all benefitted employees' pay checks without either their consent or a court order authorizing such is undercut by the active role the Government has played in opposing *any* payment of *any* attorney's fees, no matter against whom taxed or in what amount. The Government's position has been far different from putting the issue to a court to decide, and cooperating to secure a decision at such time that, if fees were awarded, the fees could have been deducted from the benefited employees' pay checks at a time when the administrative cost would have been virtually nil. Appellee has introduced an affidavit before this court suggesting that the cost of collecting the fees may now surpass one dollar per employee.

There are various ways the District Court, on consideration of the affidavit and facts, could adjust its decree to the problem. It might consider the exemption from contribution of employees whose retroactive salary payment was below some *de minimus* level.[21] Or it might provide for a means of collection at a substantially lower cost, substituting for appellee's apparent premise, of a system of voluntary contributions, a system under which the deduction is made automatically. A system of automatic deduction might provide for a notice to the employees by a form, approved by the District Court, that advised the employee that the deduction was made pursuant to order of the District Court as a means of equitable sharing of litigation expense, but that the court had preserved continuing jurisdiction and the employee could seek leave to file a petition with the court for reconsideration and reimbursement if he deemed such a disposition to be unjust. If the cost of collection is modest enough, it is doubtful that it would be inequitable to impose on the beneficiaries or the appellee an expense of such small magnitude, even though it may be greater than the amount of the actual reimbursement deduction. These issues are all left for decision by the District Court in the first instance.

*Reversed and remanded.*

---

20. *Ibid.*

21. In equity, the burden of this adjustment would appear more fairly placed on appellant than on the remaining employees.