Willard La Vern PEALO et al.

v.

FARMERS HOME ADMINISTRATION OF THE UNITED STATES DEPARTMENT OF AGRICULTURE et al., Appellants (two cases).

Nos. 76–1540 and 76–1541.

United States Court of Appeals, District of Columbia Circuit.

Argued June 7, 1977.

Decided July 21, 1977.

Rehearing Denied Sept. 12, 1977.

Paul Blankenstein, Atty., Dept. of Justice, Washington, D. C., with whom Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., and Robert E. Kopp, Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellants. Thomas G. Wilson, Atty., Dept. of Justice, Washington, D. C., also entered an appearance for appellants in No. 76–1541.

Anthony Z. Roisman, Washington, D. C., for appellees. Florence Wagman Roisman, Washington, D. C., also entered an appearance for appellees in No. 76–1541.

Before TAMM and WILKEY, Circuit Judges, and WILLIAM B. JONES,* United States Senior District Judge for the United States District Court for the District of Columbia.

Opinion for the Court filed by WILLIAM B. JONES, Senior District Judge.

* Sitting by designation pursuant to Title 28, U.S.C. § 294(c).

WILLIAM B. JONES, Senior District Judge:

Defendant-appellants (hereinafter defendants) appeal from orders of the district court entered April 6, 1976, and June 4, 1976, awarding attorneys' fees in a total amount of $38,957.61 to counsel for plaintiff-appellees (hereinafter plaintiffs). Defendants are Farmers Home Administration (FmHA), the Secretary of Agriculture and the Director of the United States Office of Management and Budget.[1] Plaintiffs are three married couples, Pealos, Fishers and Agers, and all other persons similarly situated, who had been denied subsidized loans by FmHA.[2]

The plaintiffs brought this action in May, 1973, to obtain a court order requiring defendants to implement the Farmers Home Administration's interest credit loan program so as to achieve the national housing goals established by Congress. FmHA had announced in January 1973 that it was ceasing making interest credit loans under sections 502 and 515 at the low interest rate permitted by section 521 of Title V of the Housing Act of 1949, as amended. (42 U.S.C. secs. 1472, 1485, 1490a (1970) (amended again in 1973 and 1974)) FmHA stated that its cessation of such lending was a part of a governmentwide program of an 18 month moratorium on those federal housing programs administered by Housing and Urban Development (HUD) as announced by the Secretary of HUD.

On July 31, 1973, the district court directed FmHA and the other defendants to implement the section 521 interest loan program. From that order defendants appealed. Before oral argument, FmHA advised this Court that it had decided to continue to implement the interest credit program. That appeal was dismissed as moot and the case was remanded to the district court with directions to vacate the judgment appealed from. The district court, on remand, vacated its July 31, 1973 judgment but it reserved ruling on plaintiffs' claim for attorneys' fees. (J.A. 15–16).

After briefing and argument, the district court entered the order of April 6, 1976, and the orders of June 4, 1976, which awarded plaintiffs attorneys' fees.

*The Housing Act of 1949, as Amended*

Before considering the orders appealed from and the district court's reasoning as to the propriety of the award of legal fees, an understanding of the statutory authority and purpose of farm housing lending practices becomes necessary. The Housing Act of 1949, as amended, has among its congressionally declared purposes "The realization as soon as feasible of the goal of a decent home and a suitable living environment for every American family * * *." (42 U.S.C. 1441 (1970)) Title V of the Act seeks to achieve such a goal for farm families and others living in rural areas who cannot obtain credit and are therefore unable to secure decent housing. The Act, as amended, seeks to remedy that condition by extending financial assistance to such persons. The Secretary of Agriculture acting through the FmHA is authorized to make loans. (42 U.S.C. 1471, et seq. (1970 & Supp. V 1975))

Section 502 of the Act authorized loans upon the Secretary of Agriculture (Secretary) determining that qualified applicants have "the ability to repay in full the sum to be loaned, with interest, giving due consideration to the income and earning capacity of the applicant and his family from the farm and other sources * * *." (42 U.S.C. 1472(a) (1970) (amended 1974)) Section 502 loans may be made for a maximum period of thirty-three years and bear interest at rates established from time to time by the Secretary. (42 U.S.C. 1472(a), 1490a(a)(1) (Supp. V 1975)) At the time

---

1. At the time the district court entered its Memorandum Opinion (361 F.Supp. 1320 (1973)) and resulting order on July 31, 1973, Earl Butz was Secretary of Agriculture and Roy Ash was Director of the Office of Management and Budget. The present holders of those offices, to-wit, Secretary Bergland and Director Lance, are substituted. Rule 25, F.R.C.P.

2. The district court declared this to be a class action. 361 F.Supp. at 1322.

this action was instituted, the interest rate set by the Secretary was 7¼ percent. (Appellants' Br. 5)

The Senior Citizens Act of 1962 (76 Stat. 671) added section 515 to the Housing Act of 1949. (42 U.S.C. sec. 1485 (1970) (amended 1973 and 1974)) That Act, among other things, authorized the Secretary to make loans to private nonprofit corporations and consumer cooperatives to provide housing and related facilities for elderly persons and elderly families of low or moderate income or other persons and families of low income in rural areas. The eligibility conditions for a loan under section 515(a) are, with certain exceptions, substantially identical to those specified in section 502. One exception is that the maximum loan period is fifty years. The interest rate for section 515 loans is established by the Secretary from time to time as in the case of section 502 loans. (42 U.S.C. 1485(a), 1490a(a) (Supp. V 1975))

The Housing and Urban Development Act of 1968 (82 Stat. 551) added section 521 to the Housing Act of 1949. Section 521 provides that in making either section 502 or section 515 loans, the Secretary may set the interest rate as low as one percent per annum if he first determines that the applicant for either of such loans cannot obtain financial assistance from other sources. (42 U.S.C. 1490a(a)(1) (Supp. V 1975)) While those loans formally bear the maximum interest rate set by the Secretary, the actual interest payments made by the lower income borrowers are the lower rate set by the Secretary under Section 521. Thus the borrower is subsidized in an amount which reflects the difference between what the borrower would pay at the specified maximum rate and what the borrower actually pays. This is known as the "interest credit program." [3]

The money lent to the qualified borrowers under section 502 and section 515 programs is disbursed from the Rural Housing Insurance Fund (RHIF). And this is so whether the loans are subsidized or unsubsidized. (42 U.S.C. 1487(c), (e), 1490a(c) (1970)) Congress created RHIF as a revolving fund (42 U.S.C. 1487(e) (1970)) and appropriated $100 million as the initial capitalization. (79 Stat. 399) While RHIF does not receive annual loan appropriations from Congress, the latter each fiscal year recommends a loan authorization level for the year. (J.A. 55) Any losses suffered by RHIF for any reason Congress covers by appropriations.

Besides the original capitalization appropriation, the sources of RHIF loan funds are several: (1) The Secretary can borrow money directly from the Treasury, which is accomplished by the Secretary issuing notes and obligations for purchase by the Treasury. (2) The Secretary may sell directly borrowers' promissory notes or an undivided interest in such notes. For the most part this has been through sale of certificates of beneficial ownership (CBO's) which are evidence of ownership of a proportionate interest in a block of promissory notes. The CBO's are now being sold only to the Federal Financing Bank. (3) Borrowers repay interest and principal of their loans. (4) Congress makes appropriations to cover RHIF losses.

In the district court the plaintiffs asserted that as a result of their successfully maintaining this litigation a fund of "well over one billion dollars" of interest credit loans were made in slightly more than one fiscal year since the court's July 31, 1973 order. They claim that such fund is benefiting an ascertainable class of beneficiaries. For making those interest credit loans available from RHIF funds, plaintiffs' counsel ask to be compensated. (J.A. 17–21) Defendants contend that to pay such counsel fees out of the RHIF would violate 28 U.S.C. 2412 (1970), which bars recovery of attorneys' fees against the United States. (J.A. 29) But plaintiffs would avoid the prohibitions of that statute by contending that RHIF is private money

---

**3.** The defendants on page 6 of their brief give the following example of the working of this program: if the specified rate is 7¼ percent, a low-income borrower may be credited with 6¼ percent and only pay 1 percent interest on the loan. The 6¼ percent constitutes the subsidy.

rather than government money, or alternatively, that even if the RHIF fund were government, the government's interest was simply that of a stakeholder. (J.A. 30–34)

### District Court's Orders Awarding Attorneys' Fees

The district court in awarding attorneys' fees to plaintiffs' counsel held that the plaintiffs had incurred costs "in conferring a benefit on the members of the class by releasing RHIF monies for their use, and are entitled to be reimbursed." *Pealo v. Farmers Home Administration,* 412 F.Supp. 561 at 564 (D.D.C.1976). But the court concluded that, contrary to plaintiff's contention, no common fund had been created. But that fact, according to the district court, would not necessarily defeat the recovery of attorneys' fees in this case. In that connection, the court stated (id. pp. 564–565):

. . . While it is true that the revolving nature of RHIF makes it impossible to say that the plaintiffs have created a fund, per se, the fact that no monetary fund exists has been held to be an insufficient basis by the United States Supreme Court and the Court of Appeals for this Circuit for denying an award of attorneys' fees to a plaintiff who has secured a benefit for others. *Mills, supra,* 396 U.S. at 392–96, 90 S.Ct. at 625, 24 L.Ed.2d at 606; *National Treasury Employees Union v. Nixon,* [172 U.S.App.D.C. 217], 521 F.2d 317, 320–21 (1975).

The fact that there is no "fund" per se was inevitable in this case. As was the case in *Mills,* this case was not an action to recover monies for the members of the class, as opposed to, for example, an impoundment case. See *National Council of Community Mental Health Centers, Inc. v. Weinberger,* 387 F.Supp. 991 (D.D.C. 1975). Rather, plaintiff sought to secure a benefit for the class: the possibility of obtaining a loan at low interest rates. Since the loans must be repaid, and since the CBO's are only used to raise enough money to cover the amount of approved loans, no fund per se could be established. But this does not prevent the Court from

reimbursing the plaintiff for attorneys' fees and costs expended in obtaining the benefit for the class. *See Mills, supra; National Treasury Employees Union, supra.* The only question is what means are available to obtain monies for reimbursement without violating 28 U.S.C. § 2412, and the only prohibition that § 2412 imposes is that the method of payment does not diminish the Treasury or increase the debt of the United States.

Section 2412 of Title 28 U.S.C. (1970), as pertinent here, states: "Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title but not including the fees and expenses of attorneys may be awarded to the prevailing party in a civil action brought by or against the United States or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action. * * *"

The district court correctly found that there was no statutory provision, express or implied, for the payment of attorneys' fees to plaintiffs. All that the Housing Act permits is the payment of legal fees for title search and closing costs. 412 F.Supp. at 564.

The district court recognized that the statute prohibited it from using RHIF monies obtained from the sale of CBO's to the Federal Financing Bank to pay an award of fees and costs. But it added that did not mean the court could not "utilize RHIF monies to create a fund from which an award can be paid. Nor does it mean that all monies held by the defendants are insulated by Section 2412." 412 F.Supp. at 565.

The court by its first June 4, 1976 order adopted a "beneficial use method" for securing the funds awarded to plaintiffs' counsel as fees. 412 F.Supp. at 568.

In its opinion the court explained that method as follows (412 F.Supp. at 565):

The benefit secured in this lawsuit is the *use* of RHIF monies for low-interest loans. It appears to this Court that the plaintiffs can be reimbursed by the bene-

ficial use of a sufficient sum of RHIF monies to meet the amount of the award. Such beneficial use would not violate Section 2412 because the principal (the monies obtained from the sale of the CBO's) would not be diminished, and Congress would not have to appropriate monies to cover the award. Rather, the principal, which normally would be used for loans, would be deferred from that use and instead would be invested at an interest rate that would result in a profit. The profits would then be used to pay the award. This method is particularly attractive in the instant case since the interest owed on the CBO's is low enough that a substantial fund could be generated by reinvestment at a high interest rate. And, the fact that the government would incur some administrative cost has been held not sufficient to be a violation of Section 2412. *National Treasury Employees Union, supra,* 521 F.2d at 320.

In essence the court, while recognizing that the RHIF monies were government monies to be used for the purpose of making both subsidized and unsubsidized loans to qualified persons and entities, nevertheless ordered FmHA to deposit "any and all repayments from borrowers of interest credit loans under sections 502, 515, 517 and 521 of the Housing Act of 1949" in interest bearing, passbook accounts in federally insured savings and loan associations "until such time as sufficient amounts of interest have been accrued to pay" the court's award of attorneys' fees approximating $39,000. This constituted a diversion of government funds for a period of time in order to achieve an end unrelated to the authorized purpose of the Housing Act. We, like defendants, "are unable to understand how monies earned by the investment of public funds lose their character as public monies and become available to be paid out in attorneys' fees." (Appellants' Br. 40)

In proceeding as it did, the district court considered that it was applying the common benefit doctrine. Under that doctrine the costs, including attorneys' fees, incurred by a plaintiff in successfully maintaining an action resulting in a benefit to an entire class, are to be allocated among all those who benefited. *Mills v. Electric Auto Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). But *Mills* and *Hall* did not involve the federal government and its protective shield of sovereign immunity. As 28 U.S.C. 2412 makes clear, it is only specific statutory authority that would allow the award of fees against the United States or any of its officers or agencies. As the district court found, there is no such specific authority here. The common benefit doctrine is, therefore, no more applicable here than it was in *Natural Resources Defense Council, Inc. v. Environmental Protection Agency,* 484 F.2d 1331, 1334–1335 (1 Cir. 1973).[4]

But even if there were no sovereign immunity problem in this case, it is not one where the common benefit doctrine would be applicable. As has been noted, that doctrine has for its purpose the equitable spreading of the costs of litigation, including attorneys' fees, to the beneficiaries. Here the persons who benefited from this litigation were the interest credit loan borrowers between August 10, 1973 (J.A. 11) and June 30, 1974, when the eighteen months moratorium on interest credit lending was to resume. But no costs are imposed on those beneficiaries here by the court's order diverting loan repayments from RHIF to interest bearing savings and loan association accounts. Those costs are charged to the federal government and its citizens-taxpayers. In *Mills v. Electric Auto Lite Co., supra,* and *Hall v. Cole, supra,* it was only right to impose the costs on the respective treasuries since all the corporate shareholders in *Mills* and all union members in *Hall* benefited from the respective cases. But such is not the case

---

4. While the First Circuit in *National Resources Defense Council* held that there was statutory authority for the award of attorneys' fees, this court in another *National Resources Defense*

*Council v. Environmental Protection Agency,* 168 U.S.App.D.C. 111, 512 F.2d 1351 (1975), disagreed that there was such statutory authority.

here since the interest credit borrowers were few in number compared to all citizens-taxpayers.

Moreover, it appears that the effect of the district court order for the payment of attorneys' fees would expend itself on the public treasury and interfere with the public administration, *Land v. Dollar,* 330 U.S. 731, 738, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947), as well as compel the defendants to act in a way contrary to the scheme of the Housing Act of 1949, as amended.

As has been described before, the farm housing fund was capitalized by a $100 million appropriation by Congress. Thereafter, the fund was maintained and increased by borrowers' repayment into RHIF of loans with interest, borrowing from the Department of the Treasury, the sale of certificates of beneficial ownership to the Federal Financing Bank and appropriations by Congress to cover previous losses incurred by RHIF. (J.A. 55–58, 68–69, 86–88, 98–99 —affidavits of Frank W. Naylor, Jr., Associate Administrator of FmHA) As evidenced by the Naylor affidavits to divert the principal and interest loan repayments, even though temporarily, from RHIF by investing them in savings and loan association accounts would necessarily require the Treasury of the United States to borrow funds and Congress to make appropriations to cover the losses to RHIF by such diversion. 28 U.S.C. 2412 is thus violated.

What we have stated before concerning another case is equally applicable here: "The conclusion which we draw from all of this is that the district court appears to have engaged in a valiant effort to avoid the strictures of section 2412. The court's payment formula makes it appear as if the RMPs are the source of the fee payment, when in fact it is the government which is ultimately being charged with the award. The device cannot camouflage the true payor of the fee: the government." *National Association of Regional Medical Programs v. Mathews,* 179 U.S.App.D.C. 154, 157, 551 F.2d 340, 343 (1976), *cert. denied,* 431 U.S. 930, 97 S.Ct. 2633, 53 L.Ed.2d 245 (1977). And see *National Council of Com-*

*munity Mental Health Centers v. Mathews,* 178 U.S.App.D.C. 237, 546 F.2d 1003 (1976), *cert. denied,* 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977).

The district court's order of April 6, 1976 and its two orders of June 4, 1976 awarding attorneys' fees must be reversed.

*So ordered.*