AMERICAN ASSOCIATION OF MARRIAGE AND FAMILY COUNSELORS INC., et al., Appellants,

v.

Harold BROWN, Secretary of Defense, et al.

No. 77–2110.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 4, 1978.

Decided Feb. 21, 1979.

**1366**

Michael B. Gross, Washington, D. C., for appellants.

Barbara L. Herwig, Dept. of Justice, Washington, D. C., argued, Barbara Allen Babcock, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., Leonard Schaitman and Richard A. Olderman, Attys., Washington, D. C., were on the brief, for appellees.

Before LEVENTHAL and ROBINSON, Circuit Judges, and HAROLD H. GREENE *, United States District Judge for the District of Columbia.

Opinion for the Court filed by Circuit Judge LEVENTHAL.

LEVENTHAL, Circuit Judge:

In this case we must consider the circumstances under which a party prevailing in an action to enjoin a federal official from acting illegally may, absent statutory authority, recover an award of attorneys' fees. The question has been before this court several times in recent years. Unfortunately, the opinions do not provide clear guidance. Rather than attempting a reconciliation of divergent approaches, we affirm the district court's denial of requested attorneys' fees on the ground that the circumstances of this case provide no equitable basis for shifting attorneys' fees in the manner sought by appellants.

**A.  Background**

The underlying action in this case involved the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS), a system of compensation for medical and health care services provided by civilian health care providers to certain civilian beneficiaries—primarily retired military personnel and the dependents of military personnel.[1] The program is administered by the Department of Defense through its Office of CHAMPUS.

Under the applicable statute, CHAMPUS coverage extends to the treatment of "nervous, mental, and chronic conditions."[2] Prior to 1975, regulations permitted compensation for such treatment regardless of whether it was performed by a medical doctor or by another professionally qualified therapist on referral from a medical doctor. On February 25, 1975, the Office of CHAMPUS announced that CHAMPUS

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. CHAMPUS was established under authority of the Military Medical Benefits Act and the

Dependents Medical Care Act, 10 U.S.C. §§ 1071–88 (1976).

2. 10 U.S.C. § 1077(a)(5) (1976).

would no longer reimburse treatment by marital, family, pastoral or child counselors. The services of psychiatrists, psychologists and social psychiatrists remained reimbursable by CHAMPUS.

An action was then brought for declaratory and injunctive relief, on the claim that the termination was an abuse of discretion. The plaintiffs, now appellants, were an association and eight individuals. The American Association of Marriage and Family Counselors (AAMFC) is a professional association dedicated to maintaining high standards of professional education and practice for marriage and family counselors. The eight individual plaintiffs are persons who, at the time of termination, were eligible for CHAMPUS benefits and had been receiving treatment for serious emotional disorders from marriage, family, pastoral or child counselors. They alleged that without CHAMPUS reimbursement, they would be unable to continue treatment with those counselors. The suit was not styled a class action.

On June 9, 1975, the district court issued a preliminary injunction barring the Department of Defense from terminating the benefits and ordering their retroactive reinstatement. On March 25, 1976, a consent decree was entered in which the Department agreed to continue the benefits subject to certain conditions.

On June 23, 1977, plaintiffs filed a motion in the district court seeking an award of $39,934 in attorneys' fees incurred by AAMFC in prosecuting the action, plus an incentive bonus award. Arguing that their action had conferred a benefit on CHAMPUS beneficiaries employing marriage, family, pastoral or child counselors, plaintiffs proposed that the government deduct a small sum from each reimbursement paid on behalf of such a beneficiary; that the government hold the deducted amounts until they equalled the fees due plaintiffs; and that the collected fees then be paid AAMFC and its counsel.

The district court denied the motion. *American Association of Marriage and Family Counselors, Inc. v. Brown,* 440 F.Supp. 1114 (D.D.C.1977). This appeal followed.

### B.  *Analysis*

Acknowledging the general "American rule" that a prevailing party may not recover attorneys' fees in the absence of specific statutory authorization,[3] plaintiffs invoke a well-recognized exception. They assert that their efforts in obtaining the restoration of CHAMPUS reimbursements to users of counseling services resulted in the creation of a "common benefit" and that the beneficiaries may properly be taxed for a share of the costs incurred.[4] Appellants also confront 28 U.S.C. § 2412 (1976), which precludes the payment of attorneys' fees from government funds unless permitted by statute.[5] They attempt to escape this statutory prohibition on the ground that CHAMPUS benefits accrue to beneficiaries as soon as a claim is made and approved, and, as a result, the government stands as a "stakeholder" of the monies before they are actually paid, so that the award of attorneys' fees comes not from the federal treasury, but from funds belonging to the beneficiaries.

---

**3.**  *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). No statutory basis for the award of attorney's fees is asserted in this case.

**4.**  The "common benefit" exception is an extension of the "common fund" exception, which is rooted in the power of a court of equity to control the disposition of an identifiable fund within its jurisdiction that has been created or preserved by the actions of a litigant. *See generally Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 389–97, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Sprague v. Ticonic Nation-*

al Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1938); *Trustees v. Greenough,* 105 U.S. 527, 26 L.Ed. 1157 (1882).

**5.**  That section provides in pertinent part:
   Except as otherwise specifically provided by statute, a judgment for costs, . . . but not including the fees and expenses of attorneys may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action.

As a threshold issue, the government asserts that regardless of whether the common benefit exception applies, users of counseling services may not be charged attorneys' fees because the court lacks *in personam* jurisdiction over them. The district court adopted this contention as one basis of its decision.[6] In support, the government points to cases in which an attorney retained by an association successfully prosecuted a class action to obtain the release of illegally impounded funds, and then asked the court to charge attorneys' fees to the individual class members, the ultimate beneficiaries of the released funds. Relying on the principle of fairness to class members embedded in Rule 23 of the Federal Rules of Civil Procedure and on constitutional due process notions, this court held that individual class members may not be assessed attorneys' fees when they have not appeared before the court and their interests as to the attorneys'-fees issue have not been adequately represented by the named class representative (*i. e.,* the association).[7]

In the government's view, this principle applies *a fortiori* to the non-class action context. It submits that the fact that the mode of assessment would be a deduction from a benefit check, rather than an *in personam* judgment, as in the class action cases, does not alter the essential fact that CHAMPUS beneficiaries would be assessed a fee by court order without the opportunity to appear before the court or to have their interests adequately represented.

Appellants rely on *National Treasury Employees Union v. Nixon*[8] as pertinent precedent. NTEU obtained a determination that President Nixon had illegally withheld a scheduled federal pay increase, with the result that the increase was restored not just to NTEU members but to all

federal employees. This court held that NTEU's claims for attorneys' fees fell squarely within the common benefit exception. Although the retroactive salary adjustments required by the decision on the merits had been completed, the court remanded for a determination of the legality and feasibility of deducting the fee reimbursements from federal employees' future salary checks.

Appellants argue effectively that *NTEU v. Nixon* sanctioned the procedure proposed here. There was in that case no "fund" over which the court could have been said to have had jurisdiction and from which the fees could have been subtracted. Instead, direct, personal assessments against the incomes of persons who were not before the court were contemplated. Yet there are in the opinion none of the due process concerns that animated this court in the subsequent class action cases.

The competing authorities cited to us by the parties raise a difficult problem of reconciliation. Though we note the problem for possible future resolution, we need not undertake such a reconciliation.[9]

Instead, we find another, independent basis on which the district court's decision must be affirmed. We conclude that the district court acted within its sound discretion in determining that there existed no equitable basis for fee-shifting because AAMFC, which paid the attorneys' fees for which reimbursement is sought, was the primary beneficiary of the litigation and was fully capable of bearing the costs.[10]

While the benefit to CHAMPUS beneficiaries from the litigation was real, it consisted of restoring reimbursement for alternative modes of treatment for nervous and

---

6. 440 F.Supp. at 1119.

7. *National Ass'n of Regional Medical Programs, Inc. v. Mathews,* 179 U.S.App.D.C. 154, 158–60, 551 F.2d 340, 344–46 (1976), *cert. denied,* 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977); *National Council of Community Mental Health Centers, Inc. v. Mathews,* 178 U.S.App.D.C. 237, 242–43, 546 F.2d 1003, 1008–09 (1976), *cert. denied,* 431 U.S. 954, 96 S.Ct. 2674, 53 L.Ed.2d 270 (1977).

8. 172 U.S.App.D.C. 217, 521 F.2d 317 (1975).

9. We do note, however, that the effect of the government's position might be the restriction, if not the elimination, of the seemingly well-established "common benefit" exception. *See* note 4 and accompanying text *supra.*

10. 440 F.Supp. at 1118.

mental disorders, other than the modes— psychiatrists, psychologists and social psychiatrists—that remained unaffected by the challenged termination order. This benefit was essentially ancillary to the basic interests of CHAMPUS beneficiaries, which lay primarily in access to treatment, rather than in the choice of any particular mode. The benefit to AAMFC, on the other hand, was direct and significant—preservation of a source of income for those of its members who treated CHAMPUS beneficiaries. AAMFC protests that only a very small percentage of its membership actually treated CHAMPUS beneficiaries and that its action was inspired primarily by a desire "to perform a public service: to promote marriage and family life." [11] We see no basis for rejecting the district court's perception that something more than altruism motivated AAMFC.

■ Whatever the magnitude of the benefit to AAMFC, it was of an order different from the benefit accorded the CHAMPUS beneficiaries, undercutting any notion that the fee-shifting proposed here is necessary to advance the interests of justice. Application of the common benefit rationale requires a reasonably close, though not necessarily perfect, fit between the interests of the litigants and those of the benefitting class. In *NTEU v. Nixon*, the court quoted with approval Professor Dawson:

The common fund doctrine emerged in situations where the interests of litigants and outsiders were so closely interlocked that success in the litigants inevitably brought evident and measurable gains to outsiders.[12]

In that case, the interests of the litigants (one federal employees union) and those of the benefitting class (all other federal employees) clearly met this criterion. The identity of interests was crucial to the court's conclusion that a common benefit had been created. The concern for prevention of unjust enrichment that underpins the common benefit rationale is considerably less compelling when fees and expenses have been incurred by a litigant obtaining a direct and pecuniary benefit, and the "benefit" to the class, while not inconsequential, is incremental and relatively intangible. In this posture, we see no reason to disturb the district court's conclusion that equity does not require the fee-shifting requested in this case.[13]

*Affirmed.*

11. Brief for appellants at 14.

12. 172 U.S.App.D.C. at 221, 521 F.2d at 321, quoting Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Funds,* 87 Harv.L. Rev. 1597, 1652 (1974). *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 265 n. 39, 95 S.Ct. 1612, 1625, 44 L.Ed.2d 141 (1975) (part of rationale of common fund and common benefit cases is the "reason for confidence that the costs could indeed be shifted with some exactitude to those benefiting").

13. We need not decide whether the funds from which the fees would be paid would be governmental in origin, thereby falling within the prohibition of 28 U.S.C. § 2412 (1976), *quoted* in note 5 *supra,* or whether the government was merely a "stakeholder" of the funds. In *National Treasury Employees Union v. Nixon,* 172 U.S.App.D.C. 217, 219, 521 F.2d 317, 319 (1975), the government conceded that the statute was not applicable because "the request is for reimbursement from benefitted employees and not from the public treasury." In subsequent cases, the government's position has stiffened. *See Pealo v. Farmers Home Administration,* 183 U.S.App.D.C. 225, 562 F.2d 744 (1977); *National Ass'n of Regional Medical Programs, Inc. v. Mathews,* 179 U.S.App.D.C. 154, 156–57, 551 F.2d 340, 342–43 (1976), *cert. denied,* 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977); *National Council of Community Mental Health Centers, Inc. v. Mathews,* 178 U.S.App.D.C. 237, 240–42, 546 F.2d 1003, 1006–08 (1976), *cert. denied,* 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977).