Karen **JOHNSON** and Dorothy Pearson, individually and on behalf of all others similarly situated, Appellants,

v.

The **UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD)**; Jack Kemp, in his official capacity as Secretary of HUD; Southern Commercial Bank, a Missouri banking organization; Hillvale Associates, a Missouri limited partnership; Medve–Wald Partnership, a Missouri limited partnership; Rodan Management, Inc., a Missouri corporation, Appellees.

No. 89–2853.

United States Court of Appeals, Eighth Circuit.

July 22, 1991.

Ann B. Lever, St. Louis, Mo., for appellants.

David T. Hamilton, St. Louis, Mo. and Scott R. McIntosh, Washington, D.C., for appellees.

Before McMILLIAN and BEAM, Circuit Judges, and HEANEY, Senior Circuit Judge.

McMILLIAN, Circuit Judge.

This matter is before the court upon plaintiffs' motion for attorney's fees in connection with their successful appeal in *Johnson v. HUD*, 911 F.2d 1302 (8th Cir. 1990), *rev'g* 724 F.Supp. 1257 (E.D.Mo. 1989). Plaintiffs seek attorney's fees from the federal defendants under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1), and from the private defendants under the common, or substantial, benefit exception to the American Rule. For the reasons discussed below, we deny plaintiffs' motion for attorney's fees on appeal.

In *Johnson v. HUD* this court held that the Emergency Low Income Housing Preservation Act of 1987, Pub.L. No. 100–242, 101 Stat. 1877 (1988) (Preservation Act) (*codified at* 12 U.S.C. § 1715*l* note), as amended and clarified by § 202 of the Department of Housing and Urban Development Reform Act of 1989, Pub.L. No. 101–235, 103 Stat. 1987, 2037 (1990) (Reform Act) (*codified at* 12 U.S.C.A. § 1715*l* note) (West Supp.1990), controls the method by which private owners of housing financed under § 221(d)(3) of the National Housing Act of 1961, 12 U.S.C. § 1715*l*(d)(3) (1988), may terminate their obligation to provide low and moderate income housing. Plaintiffs are low-income tenants in the Hillvale Apartment complex. The private defendants are the owners of the complex, the Hillvale Associates and Medve–Wald Partnership, the manager of the complex, Rodan Management Inc., and Southern Commercial Bank, the current holder of a mortgage note on the complex. The federal defendants are the Department of Housing and Urban Development (HUD) and its Secretary. Construction of the complex was financed under the National Housing Act as part of the federal government's national housing policy to develop low and moderate income housing. HUD agreed to insure the mortgage against default and to subsidize below-market interest rates in exchange for Hillvale's promise to abide by certain low income affordability restrictions set forth in a regulatory agreement. HUD regulations provided two ways of terminating the regulatory agreement before the expiration of the mortgage—the owner could either prepay the mortgage or, with the consent of the mortgagee, terminate federal mortgage insurance. 24 C.F.R. § 207.253(a), (b) (1988). Mortgage prepayment within the first 20 years of the life of the mortgage required HUD approval. *Id.* § 221.524(a)(2). After 20 years, the owner was free to prepay the remainder of the mortgage balance and release itself from the regulatory agreement without HUD approval. *Id.* § 221.524(a)(1)(ii). However, the owner's right to terminate federal mortgage insurance with the consent of the mortgagee was not subject to HUD approv-

al at all. 12 U.S.C. § 1715t; 24 C.F.R. § 207.253(b).

In 1983 Congress further limited HUD's authority to approve mortgage prepayment requests within the first 20 years of the life of the mortgage, but not the owner's right to prepay after 20 years or the right of the owner to terminate the mortgage insurance with the consent of the mortgagee. During the mid–1980s Congress realized that some 1 million units of low income housing built during the 1960s would no longer be subject to rent restrictions because of the expiration of the 20–year moratorium on unilateral mortgage prepayment and rental assistance contracts. In 1987 Congress passed the Preservation Act making it much more difficult for an owner of low income housing to release itself from the regulatory agreement by mortgage prepayment. For example, the Preservation Act required the owner to notify HUD of its intent to prepay the mortgage and thus terminate the regulatory agreement and to assess the effect of the termination on the current tenants and the local supply of affordable housing. HUD can approve mortgage prepayment only if it determines that it will not materially harm existing tenants and that sufficient affordable housing exists in the community.

The Hillvale Apartment complex was built during 1967 and 1968 and was not eligible for mortgage prepayment without HUD approval until September 1988. The enactment of the Preservation Act effectively precluded termination of the regulatory agreement, which included restrictions on rent increases as well as other tenant protections, by unilateral mortgage prepayment. Instead, the owners and manager of Hillvale decided to terminate the regulatory agreement by filing a request to terminate mortgage insurance, with the consent of the mortgagee, Southern Commercial Bank, under 12 U.S.C. § 1715t. The private defendants argued that the Preservation Act applied only to mortgage prepayment and not to termination of mortgage insurance with the consent of the mortgagee under 12 U.S.C. § 1715t. HUD agreed with the private defendants' inter-

pretation of the scope of the Preservation Act and approved their request for termination of mortgage insurance, thus releasing Hillvale from the restrictions on rent increases and other tenant protections contained in the regulatory agreement.

In October 1988 plaintiffs and other Hillvale tenants received notices of a 30–35% rent increase effective December 1, 1988. Plaintiffs filed this action against the private and federal defendants seeking declaratory and injunctive relief. Plaintiffs argued that the Preservation Act applied to termination of regulatory agreements by termination of mortgage insurance as well as by mortgage prepayment. The owners agreed to defer any rent increases from December 1988 to March 1989, reserving the right to retroactively collect any rent increases if they prevailed on the merits. In February 1989 the district court granted a temporary restraining order against any rent increases pending a hearing on plaintiffs' motion for preliminary injunctive relief. In October 1989 the district court held the Preservation Act applied only to mortgage prepayment and not to voluntary mortgage insurance termination and granted summary judgment in favor of the federal and private defendants. 724 F.Supp. at 1263–64. Plaintiffs filed a notice of appeal and a motion for an injunction pending appeal in the district court. The district court granted the injunction pending appeal, which we continued pending further order of the court.

After briefing and oral argument, this court reversed, holding that the Preservation Act as originally enacted applied to voluntary mortgage insurance termination as well as mortgage prepayment. Unlike the district court, we had the advantage of the Reform Act, which was passed in December 1989 after the district court's decision. The Reform Act explicitly referred to voluntary mortgage insurance termination and clarified that Congress had intended the Preservation Act to apply to both mortgage prepayment and voluntary mortgage insurance termination. In the district court proceedings, HUD had argued that the Preservation Act applied only to mortgage prepayment. However, after passage of the Reform Act, HUD changed its position and argued on appeal that the Preservation Act applied to voluntary mortgage insurance termination.

## EQUAL ACCESS TO JUSTICE ACT

Plaintiffs seek attorney's fees on appeal from the federal defendants under the EAJA. Plaintiffs argue that HUD's initial interpretation of the Preservation Act as not applying to voluntary mortgage insurance termination was unreasonable in light of national housing policy and the affordable housing crisis that prompted the passage of the Preservation Act. The federal defendants argue that HUD's initial interpretation of the scope of the Preservation Act was not unreasonable in light of its ambiguous language and legislative history, as well as the absence of any express reference to voluntary mortgage insurance termination. The federal defendants also argue that, even if HUD's initial interpretation was not substantially justified, the subsequent enactment of the Reform Act, which explicitly clarified the intended scope of the Preservation Act, and HUD's change of position on appeal as a result of the Reform Act constitute "special circumstances" which would make an award of attorney's fees unjust.

Under 28 U.S.C. § 2412(d)(1)(A), prevailing parties in civil actions are entitled to an award of attorney's fees and other expenses against the federal government if the government's position was not "substantially justified" and no special circumstances make such an award unjust. *See Commissioner of INS v. Jean*, —— U.S. ——, 110 S.Ct. 2316, 2319, 110 L.Ed.2d 134 (1990). Plaintiffs are prevailing parties. However, we find that the position of the federal defendants was substantially justified. The term "substantially justified" means " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565–66, 108 S.Ct. 2541, 2550–51, 101 L.Ed.2d 490 (1988) (internal citations omitted). HUD's initial interpretation limiting the scope of the Preservation Act to mortgage prepayment

was not unreasonable. The issue was a close one. Neither the statutory language nor the legislative history of the Preservation Act expressly referred to voluntary mortgage insurance termination, although, as noted in our prior opinion, a literal application of the statutory term "change in status" and the relevant legislative history supported a broader interpretation. HUD's initial interpretation was accepted by the district court, and the scope of the Preservation Act was later "clarified" by the Reform Act, in part because of this very litigation. Under these circumstances, we conclude that the government's position was substantially justified. We need not reach the issue of whether HUD's subsequent change in position on appeal in light of the Reform Act constitutes a special circumstance.

## SUBSTANTIAL BENEFIT EXCEPTION

■ Plaintiffs also seek attorney's fees on appeal from the private defendants under the common, or substantial, benefit exception to the American Rule. To avoid confusion, this discussion uses the term "substantial benefit" instead of "common benefit." *See* 1 M. Derfner & A. Wolf, Court Awarded Attorney Fees ¶ 3.01[1], at 3–3 (1991). Under the American Rule, each party pays its own attorney's fees; a prevailing party cannot recover attorney's fees from a losing party absent express statutory authority or bad faith or unless the litigation involves a common fund or confers a substantial benefit on an ascertainable group. *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247–70, 95 S.Ct. 1612, 1616–28, 44 L.Ed.2d 141 (1975); *Linquist v. Bowen*, 839 F.2d 1321, 1323–24 (8th Cir.), *cert. denied*, 488 U.S. 908, 109 S.Ct. 259, 102 L.Ed.2d 247 (1988). Plaintiffs argue that, as a result of this litigation, the Hillvale tenants received a substantial benefit because HUD cannot approve the voluntary mortgage insurance termination and the private defendants will remain subject to the rent restrictions and other tenant protections in the regulatory agreement. Plaintiffs argue that, subject to HUD approval, the private defendants could recover the award of attorney's fees

by increasing the rents. The private defendants argue that the substantial benefit exception does not apply because there is no assurance that HUD would approve a rent increase to cover an award of attorney's fees or that any award could be spread among the benefited class.

■ "[T]he substantial benefit [exception] begins with the premise that persons directly benefiting from a lawsuit should share the legal expenses incurred by the named plaintiff to avoid unjust enrichment of the absent beneficiaries." 1 M. Derfner & A. Wolf, Court Awarded Attorney Fees ¶ 3.01[1], at 3–2. The elements of the substantial benefit exception are (1) a substantial benefit, (2) an ascertainable class and (3) jurisdiction to spread the costs to the beneficiaries. *Id.* ¶ 3.02, at 3–18. We agree with plaintiffs that this litigation has resulted in a substantial benefit to an ascertainable class. What is more difficult, however, is the third element, jurisdiction to spread the costs proportionately among the members of the benefited class. *Id.* ¶ 3.05[1], at 3–27.

The typical substantial benefit case involves either shareholder derivative actions, *e.g., Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), or entities like unions, *e.g., Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). In a shareholder derivative action, the successful shareholder plaintiff confers a substantial benefit on all of the shareholders of the defendant corporation. Any fees assessed against the corporation can be spread proportionately among all of the shareholders, who are the real beneficiaries of the litigation, because the corporation is the alter ego of the shareholders. *See Mills v. Electric Auto–Lite Co.*, 396 U.S. at 393–94, 90 S.Ct. at 626–27. Similarly, in *Hall v. Cole*, a union member successfully sued the union for expelling him in violation of his free speech rights. The Supreme Court affirmed an award of attorney's fees against the union under the substantial benefit exception because the individual plaintiff, in vindicating his free speech rights, "necessarily rendered a substantial service to his union as an institu-

tion and to all of its members." 412 U.S. at 8, 93 S.Ct. at 1948. In either context, "the class of beneficiaries is before the court in fact or in some representative form." 1 M. Derfner & A. Wolf, Court Awarded Attorney Fees ¶ 3.05[1], at 3–28 (footnote omitted).

█ In the present case, however, the private defendants are neither the alter ego nor the representative of the benefited class of Hillvale tenants. There is no "congruence" between the private defendants and the benefited class of Hillvale tenants and thus no basis for an award of attorney's fees under the substantial benefit exception. *Id.* ¶ 3.05[2], at 3–29 to –30; *see, e.g., Stevens v. Municipal Court,* 603 F.2d 111, 113 (9th Cir.1979) (per curiam) (no award against defendant county because no showing that award of fees would shift costs of litigation to benefited class of indigent prisoners); *Pealo v. Farmers Home Administration,* 183 U.S.App.D.C. 225, 562 F.2d 744, 748 (1977) (borrowers benefited from litigation, but cannot charge fees against government agency administering loan program); *Sierra Club v. Lynn,* 502 F.2d 43, 65 (5th Cir.1974) (county residents benefited from environmental litigation, but cannot charge fees against private developer defendant), *cert. denied,* 422 U.S. 1049, 95 S.Ct. 2668, 45 L.Ed.2d 701 (1975).

Accordingly, we deny plaintiffs' motion for attorney's fees on appeal against the federal defendants under the EAJA and against the private defendants under the common, or substantial, benefit exception to the American Rule.