724 F.Supp. 1257 (1989)
Karen JOHNSON, et al., Plaintiffs,
v.
UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD), et al., Defendants.
No. 88-2293 C (5).
United States District Court, E.D. Missouri, E.D.
October 31, 1989.
Ann B. Lever, Kayla Vaughan, and Susan Alverson, Roger J. Bertling, Legal Services of Eastern Missouri, Inc., St. Louis, Mo., for plaintiffs.
William Travis, St. Louis, Mo., for Southern Commercial Bank.
Joseph B. Moore, Asst. U.S. Atty., St. Louis, Mo., for HUD and Samuel Pierce.
Donald F. Flint, Chief Counsel, Dept. of HUD, St. Louis, Mo., for HUD.
Thomas M. Newmark and Thomas P. Hohenstein, Gallop, Johnson and Newman, St. Louis, Mo., for Hillvale Associates, Medve-Wald Partnership and Rodan Management, Inc.
Margaret Plank, Federal Programs Branch, Dept. of Justice, Washington, D.C., for Federal defendants.

MEMORANDUM
LIMBAUGH, District Judge.

A. Introduction.

This cause arises out of an agreement in April, 1988 between defendants Hillvale *1258 Associates and Southern Commercial Bank, mortgagor and mortgagee, respectively, of the Hillvale Apartments project in the City of St. Louis (the private defendants), to terminate federal mortgage insurance for the project. Plaintiffs, three tenants of Hillvale Apartments, assert that the private defendants' agreement to terminate federal insurance and the United States Department of Housing and Urban Development's (HUD's) acceptance of the termination of insurance, and its resultant termination of regulatory control over the Hillvale Apartments, violated the mortgage insurance contract, the National Housing Act (NHA), the Emergency Low Income Housing Preservation Act of 1987 (the Preservation Act), and regulations promulgated thereunder.
Plaintiffs seek a declaration that HUD violated the Administrative Procedure Act, 5 U.S.C. § 706(2)(A),(C) and (D) by: (1) approving the termination of insurance without requiring private defendants to comply with the requirements of the 1983 amendments to the NHA provisions governing the prepayment of federal mortgage insurance, 12 U.S.C. § 1715z-15; (2) approving the termination of insurance without requiring private defendants to obtain the written consent of the Secretary for prepayment as required by HUD regulations governing prepayment of federally insured mortgages, 24 C.F.R. § 221.524(a), and by the federal insurance contract; (3) approving the termination of insurance without requiring the private defendants to comply with the requirements of the Preservation Act; (4) approving the termination of insurance without providing the tenants of Hillvale Apartments an opportunity to be heard in accordance with NHA provisions governing prepayment of federally insured mortgages, 12 U.S.C. § 1715z-15; and (5) refusing to void the termination of insurance. Plaintiffs also seek a declaration that the private defendants violated the 1983 amendments to the NHA provisions, 12 U.S.C. § 1715z-15, and 24 C.F.R. § 221.524(a), as well as the Preservation Act. Plaintiffs also seek relief alleging that both HUD and the private defendants violated plaintiffs' due process rights by terminating the low-income affordability restrictions without providing plaintiffs notice and an opportunity to be heard. Finally, plaintiffs contend that the private defendants breached a federal contract by terminating the mortgage insurance, which led to the termination of the low-income affordability restrictions.

B. Summary Judgment Standards.

This matter is now before the Court on both federal and private defendants and plaintiffs' cross-motions for summary judgment. Courts have repeatedly recognized that summary judgment is a harsh remedy which the courts should only grant when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mutual Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Even though courts do emphasize that summary judgment is an extreme measure, they recognize its beneficial purpose of avoiding useless, expensive and time-consuming trials when there really is nothing for the trier of fact to determine. Lyons v. Board of Education of Charleston, 523 F.2d 340, 347 (8th Cir.1975).
The standards for determining whether to grant summary judgment are well settled. Pursuant to federal Rule 56(c), a district court may grant a motion for summary judgment if all the information before the Court shows that "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The fact that both sides may move for summary judgment does not automatically establish that there are no genuine issues of material fact; nor does it establish that either party is entitled to such a judgment. It is left to the Court to reach such a determination based on the information before it. United States v. Porter, 581 F.2d 698, 703 (8th Cir.1978). Upon review of the pleadings, the Court finds that there are no genuine issues of material fact. Thus, one of the parties is entitled to judgment as a matter of law.

*1259 C. Statement of the Facts.

The Court finds the following facts: Plaintiffs Karen Johnson, Dorothy Pearson and Yvonne Edmond are tenants at the Hillvale Apartments, located at 5830 Selbert Court in the City of St. Louis, Missouri. The Hillvale Apartments are owned by defendant Hillvale Associates and managed by Rodan Management, Inc.
In 1967 the original owners of the Hillvale Apartments executed a deed of trust on the property to secure a promissory note held by First National Bank in St. Louis. The note carried FHA insurance, and was payable at the rate of six percent per year until final endorsement by HUD and thereafter through maturity at three percent per year. The maturity date was December 1, 2008. As a condition to obtaining federal mortgage insurance on the note, the original owners of the complex entered into a regulatory agreement with the predecessor of what is now HUD. On September 30, 1968, after final endorsement of the note and deed of trust by FHA, First National Bank in St. Louis assigned the note to the Government National Mortgage Association (GNMA). In 1984 GNMA auctioned the Note to Mid America Bank and Trust, which then became the mortgagee with the mortgage insurance in place.
Hillvale Associates purchased the apartment complex in 1985. In June 1986, Mid-America assigned the original deed of trust and note to Southern Commercial. On April 28, 1988 Hillvale Associates and Southern Commercial Bank submitted a joint request to HUD for voluntary termination of the federal insurance on the note, accompanied by the original loan document for cancellation of the insurance endorsement. On July 20, 1988 HUD sent an acknowledgement of termination of the mortgage insurance to Southern Commercial Bank. Both the request for termination and the termination itself took place after the effective date of the Preservation Act on February 5, 1988. Hillvale did not prepay the mortgage, but simply released the federal mortgage insurance. There is no suggestion on the part of any party, nor does the Court find any indication in the pleadings, that the agreement between the mortgagor and mortgagee to terminate the federal mortgage insurance was in anyway fraudulently induced or motivated.
The tenants received no notice from either the owner or HUD concerning any of these transactions until October 24, 1988. On that date defendant Rodan Managements, Inc., sent them a letter stating that Hillvale was no longer a HUD subsidized project under the § 221(d)(3) Below Mortgage Interest Rate (BMIR) program and that rents for current tenants would increase to $325.00 for two-bedroom units and $350.00 for three-bedroom units, effective December 1, 1988. The federal defendants refused to void these transactions as contrary to federal law. Thus, plaintiffs brought this action seeking relief.

D. Statutory and Regulatory Framework.

Congress enacted the National Housing Act of 1937 "to remedy ... the acute shortage of decent, safe, and sanitary dwelling[s] for families of low income." National Housing Act, Ch. 896 § 1, 50 Stat. 888 (1937). This Act established a Federal Housing Authority, which is now the Department of Housing and Urban Development, to oversee the disbursement of funds and loans for the development of low-rent housing and slum clearance projects.
By the 1960s Congress determined that a housing gap existed. Millions of middle-income families were unable to finance the purchase of homes but were not so poor as to be entitled to public housing. To develop housing for these families, Congress passed the National Housing Act of 1961. Orrego v. HUD, 701 F.Supp. 1384 (C) (N.D. Ill.1988).
The 1961 Act provided for a below mortgage interest rate program (BMIR). See, 12 U.S.C. § 1715l. The § 221(d)(3) program encourages private development of housing for moderate and low income individuals by insuring low interest mortgages for owners who construct and maintain multifamily dwellings. After the construction of the project is completed, the project deed of trust or mortgage is purchased by *1260 GNMA. When GNMA becomes the assignee, the mortgage bears an effective below market interest rate of approximately 3%.
In addition to having the benefit of a 3% mortgage, owners receive further direct and indirect financial benefits from participation in the § 221(d)(3) program. Their mortgages are insured against default by HUD; they may obtain a 90% mortgage with a comparatively small amount of initial equity capital; and owners may obtain various tax deductions and offsets.
As a condition of receiving the benefits of such insured mortgages, project owners are regulated by the Secretary of HUD under a "Regulatory Agreement" that places limitations on their activities in the subsidized project with respect to "rents, changes and methods of operation," 12 U.S.C. § 1715l(d)(3), for the duration of the mortgage insurance. The Agreement includes restrictions limiting occupancy for new tenants to low and moderate income families, 24 C.F.R. § 221.530(a); restrictions on the rent actually charged tenants, 24 C.F.R. § 221.530; restrictions on the procedure for increasing rents, 24 C.F.R. § 245, Subpart D; and restrictions on the procedures for evicting tenants, 24 C.F.R. § 247, Subpart A.
These federal restrictions on projects operations are imposed by federal statutes, HUD regulations, and the Regulatory Agreement for as long as the projects' original HUD insured loan and mortgage remain outstanding. Federal mortgage insurance and the attendant Regulatory Agreement pertaining to an insured project could be terminated prior to expiration of the mortgage terms in two ways: the mortgagor and mortgagee could enter into a mutual agreement to terminate the federal insurance; or, the mortgagor could unilaterally prepay the mortgage.
With regard to voluntary termination of mortgage insurance, the insurance contract shall terminate upon the receipt by the Secretary of a written request by the mortgagor and mortgagee or lender, on a form prescribed by the Secretary. The request must be accompanied by the original credit instrument for cancellation of the insurance endorsement and the remittance of all sums to which the Secretary is entitled. The termination shall become effective as of the date these requirements are met. 12 U.S.C. § 1715t; 24 C.F.R. 207.253(b).
Pursuant to 12 U.S.C. § 1715b, HUD also issued regulations concerning the mortgagors' ability to prepay the mortgage. Title 24 C.F.R. § 221.524(a) provided the method for termination of HUD control by prepayment. It allowed a mortgagor to prepay its indebtedness in full (thereby terminating HUD control) without prior consent of HUD where prepayment occurred after the expiration of twenty years from the date of final endorsement of the mortgage.
In 1983, Congress enacted statutory restrictions setting the standards for any HUD approval of mortgage prepayment during this twenty-year period. These procedures were set out in 12 U.S.C. § 1715z-15, independent from the voluntary termination of federal insurance provision found in § 1715t. In order for the Secretary to grant approval, three conditions had to be met. First, the Secretary had to determine that the project no longer met a need for low-income housing in the area. Second, the tenants had to be given notice and an opportunity to comment on the proposed prepayment, and HUD had to consider the tenants' comments. Finally, HUD had to ensure adequate relocation of the affected tenants.
In 1987, many § 221(d)(3) buildings became eligible for prepayment. By then, the § 221(d)(3) program was no longer active as a source for development of new housing. Congress found that the prepayment of mortgages on § 221(d)(3) projects for lower income families presented a national crisis: (1) in the next 15 years, more than 330,000 low income housing units insured or assigned under § 221(d)(3) and 236 of the National Housing Act could be lost as a result of termination of low income affordability restrictions; (2) this loss would inflict "unacceptable" harm on current tenants and would precipitate a grave national crisis in the supply of low-income housing that was neither anticipated nor intended when contracts for these units *1261 were entered into; (3) this loss would irreparably damage the hard won progress toward important and long-established national objectives such as providing a more adequate supply of decent, safe and sanitary housing that is affordable to low income Americans. See § 202. "Findings and Purpose."
In response to this crisis, in December, 1987 Congress passed the Emergency Low Income Housing Preservation Act as an interim emergency measure, effective until February 5, 1990, to permit Congress to study the problem and develop a more comprehensive permanent solution. The Preservation Act temporarily amended until 1990 various provisions in the National Housing Act. Specifically, the Act amended § 1715z-15 of Title 12, the 1983 Amendment. The Act requires § 221(d)(3) owners desiring to prepay their mortgages to develop a plan of action for terminating low income affordability restrictions. The plan of action can be approved by HUD only upon HUD's determination that low income tenants will not be unduly burdened.
Section 225 of the Emergency Preservation Act, entitled "Criteria for Approval of Plan and Action," sets forth certain steps and conditions which have to be met before the prepayment of the mortgage is permissible. First, an owner of housing financed by a loan or mortgage that is insured and subsidized under § 221(d)(3) of the National Housing Act who is seeking to prepay the mortgage must file with the Secretary of HUD a "notice of intent" to prepay. Upon receipt of the notice of intent, the Secretary must provide to the owner such information as the owner needs to prepare a plan of action, which information shall include a description of the federal incentives authorized by the Preservation Act to induce the owner to retain the housing affordable for low income tenants. A plan of action that involves termination of the low income affordability restrictions such as prepayment of the mortgage may be approved only on a finding by the Secretary that implementation of the plan will not materially increase economic hardship for the current tenants or involuntarily displace current tenants (except for good cause shown) where comparable and affordable housing is not readily available.
The Secretary cannot approve any prepayment unless he makes a written finding that the supply of vacant, comparable housing is sufficient to ensure that the prepayment will not materially affect the availability of decent safe and sanitary housing affordable to low income families in the area, will not materially affect the ability of lower income families to find housing near employment opportunities, and will not materially affect the housing opportunities of minors in the community within which the housing is located.
The parties agree that the Hillvale Apartment complex is a housing project operated and subsidized since at least 1968 under the § 221(d)(3) program, 12 U.S.C. § 1715l (d)(3) and (5).

E. Contentions of the Parties.

Plaintiffs contend that by voluntarily terminating their mortgage insurance, defendants violated § 1715z-15, as well as the Preservation Act. Plaintiffs maintain that the 1983 Amendment and the Preservation Act affected both the mortgagor's ability to unilaterally prepay his mortgage, and the ability of the mortgagor and mortgagee to voluntarily terminate federal insurance. 24 C.F.R. § 207.253(a) and (b); § 221.524(a). Accordingly, in order for a mortgagor to prepay a mortgage, or to voluntarily terminate his federal mortgage insurance, the mortgagor had to follow the regulations set out in § 1715z-15, and those later chronicled in the Preservation Act.
It is defendants' contention, however, that the language of the 1983 Amendment, as well as the language of the Preservation Act, applied only to the prepayment of mortgages. Congress was concerned with the mortgagor's ability to unilaterally divest himself of HUD restrictions. In the case of voluntary termination, however, both the mortgagor and the mortgagee have to agree to terminate the insurance. There have been very few instances of this occurring nationwide, and Congress did not *1262 foresee voluntary termination as a contributor to the national housing crisis.

F. Issue Presented.

The Court must determine whether the procedures imposed by the 1983 Amendment and the Preservation Act affected only the prepayment of mortgages, or whether they also included within their reach mortgagors and mortgagees who voluntarily agree to terminate federal insurance on their mortgages. Not only does this issue appear to be one of first impression in this circuit, but to the best of this Court's knowledge, this specific issue has not heretofore been addressed by any court in the United States.

G. Analysis.

The Court reaches the conclusion that the procedures delineated in the 1983 Amendment and the Preservation Act do not apply to the voluntary termination of federal mortgage insurance. The Court reaches this decision based upon three considerations. First, and most importantly, it is clear from the plain language of the statute that the procedures apply only to the prepayment of mortgages. Second, the Congressional hearings are replete with discussions of the problem of prepayment of mortgages, yet never make mention at any time of the effect the voluntary termination of mortgage insurance has in the overall scheme of the national housing crisis. Third, a court should defer to the interpretation an agency gives to its own statutes and regulations in some circumstances. HUD has determined that the procedures implemented by the 1983 Amendment and the Preservation Act do not apply to the voluntary termination of mortgage insurance.

1. Plain Language of the Statute.

When the National Housing Act was passed in 1961, Congress included § 1715t, which specifically provided for voluntary termination of federal insurance. With such termination, the mortgagor no longer found himself under the HUD restrictions. There was no provision within the statute at that time addressing prepayment of the mortgage. Various HUD regulations, however, identified two ways in which one could eliminate the HUD restrictions. One of those ways was voluntary termination of federal insurance. 24 C.F.R. § 207.253(b). The second way was to prepay the mortgage. 24 C.F.R. § 221.524(2). Prepayment is a unilateral way in which a mortgagor could eliminate the HUD restrictions. The provision stated that once a mortgagor had paid twenty years on its mortgage, the mortgagor could prepay the mortgage. Furthermore, a mortgagor could prepay his mortgage prior to the twentieth year limit if he acquired HUD approval.
In 1983, Congress enacted § 1715z-15 which imposed some restrictions on a mortgagor who desired to prepay his mortgage. This provision was enacted independent from § 1715t. The language of this new provision specifically stated that during any period in which a mortgagor is required to obtain the approval of the Secretary for prepayment (which is the 20-year period), the Secretary cannot accept the prepayment unless certain circumstances exist. In § 1715z-15(a)(2) and (3) the statute again specifically identified prepayment as the concern. Nowhere within the statute does Congress mention the voluntary termination of federal insurance, or § 1715t. This is not mentioned because a mortgagor does not require HUD approval to terminate federal insurance. As stated in 24 C.F.R. § 207.253(b), if the mortgagor and mortgagee agree to terminate federal insurance, the Secretary must automatically accept that decision and terminate HUD control.
The plain language of the Preservation Act also clearly indicates that it applies only to the prepayment of mortgages. In the Preservation Act under § 201, the Short Title, it states that the Act repeals various NHA provisions. Specifically it states that the Preservation Act amends § 1715z-15(a)(1) of the NHA. There is no mention of § 1715t. Furthermore, within the Act itself the language addresses only the prepayment of mortgages. Throughout *1263 the Act there is no mention of voluntary termination of federal insurance.
It is the Court's conclusion that based on the plain language of the statute, the procedures designated in the 1983 Amendment and the Preservation Act were only intended to affect the prepayment of mortgages pursuant to 24 C.F.R. § 221.524(a). Although not directly on point, the case of Walker v. Pierce, 665 F.Supp. 831 (N.D. Cal.1987) reaches the same conclusion that the express language of the Preservation Act makes it clear that Congress was concerned exclusively with mortgage prepayments. Id. at 836. See also, Orrego v. HUD, 701 F.Supp. 1384 (C) (N.D.Ill.1988).

2. Congressional Intent.

Without relaying the entire Congressional Hearing Record, the Court finds upon an examination of the hearing records, that although Congress made significant mention of the effect the prepayment of mortgages had on the housing crisis, at no time did Congress concern itself with the contribution that voluntary termination of federal insurance would make to the crisis. In fact, Congress did not appear to be at all concerned with voluntary termination. The Records clearly establish that Congress focused on the problem of prepayment of § 221(d)(3) mortgages, and sought to address that problem. The Records do not contain any reference to the separate statutory authorization for termination of mortgage insurance by joint request of the mortgagor and mortgagee. The Court also finds there is no indication in the records that Congress was concerned with the possibility of a mortgagor and mortgagee fraudulently entering into an agreement to terminate federal insurance for the sole purpose of eliminating federal control over the property. See, H.R.Conf.Rep. No. 426, 100th Cong., 1st Sess. 193, reprinted in 1987 U.S.Code Cong. and Ad.News, 3317, 3490.
It is this Court's position that had Congress intended the procedures set forth in the 1983 Amendment and the Preservation Act to apply to the voluntary termination of insurance as well as to the prepayment of mortgages, Congress would have referenced this at some point throughout the hearings. The fact that Congress did not do so is a significant consideration for this Court in its determination that the two statutes do not affect a mortgagor and mortgagee's ability to voluntarily terminate the federal mortgage insurance.

3. Administrative Interpretation.

A court ordinarily defers to an agency's interpretation of a statute or regulation when it appears consistent with language of the statute and the intent of Congress in enacting the relevant statute. Oregon Dept. of Human Resources v. Dept. of Health and Human Services, 727 F.2d 1411, 1413 (9th Cir.1983). This is particularly so when the agency is charged with administering the statute. Moon v. U.S. Dept. of Labor, 727 F.2d 1315, 1317-18 (D.C.Cir.1984). See, Sorensen v. Andrus, 456 F.Supp. 499, 501 (D.Wyo.1978) (when faced with problem of statutory construction, defer to interpretation given by the agency charged with its administration). The reviewing court's principal task is to insure that the administrative interpretation is not inconsistent with the statutory mandate and does not frustrate the congressional policy underlying a statute. N.L.R.B. v. Charles D. Bonanno Linen Service, Inc., 630 F.2d 25, 35 n. 25 (1st Cir.1980), affirmed 454 U.S. 404, 102 S.Ct. 720, 70 L.Ed.2d 656 (1982). HUD has interpreted the 1983 Amendment and the Preservation Act to affect only the unilateral prepayment of mortgages by a mortgagor, and not to affect a mortgagor and mortgagee's joint decision to terminate federal mortgage insurance. HUD is the agency charged with the administration of these provisions. The Court finds that it should defer to HUD's interpretation of the provisions, because HUD's interpretation is consistent with the language of the statute and the intent of Congress.

H. Conclusion.

For all of these reasons, the Court finds the 1983 Amendment, § 1715z-15, and the Preservation Act work only to impose restrictions *1264 upon the prepayment of mortgages. Accordingly, when the private defendants elected to terminate their federal mortgage insurance, the private defendants did not violate § 1715z-15, the Preservation Act, or the regulations promulgated thereunder. Furthermore, HUD did not violate the Administrative Procedure Act when it terminated its control over the Hillvale project after the private defendants presented HUD with their agreement to terminate the federal insurance. The Court finds pursuant to 5 U.S.C. § 706 that HUD's actions clearly were not arbitrary and capricious.
The Court further finds that the private defendants and HUD did not violate plaintiffs' due process rights by acting to terminate the federal mortgage insurance on the Hillvale project. See, Portela v. Pierce, 650 F.2d 210, 213-14 (9th Cir.1981); Grace Towers Tenants Assn. v. Grace Housing, 538 F.2d 491, 494 (2d Cir.1976).

ORDER
In accordance with the Memorandum issued this date,
IT IS HEREBY ORDERED that defendant HUD's motion for summary judgment is GRANTED.
IT IS FURTHER ORDERED that the private defendants' motion for summary judgment is also GRANTED.
IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment is DENIED.
IT IS FURTHER ORDERED that all other outstanding motions are DENIED as moot.
IT IS FINALLY ORDERED, ADJUDGED AND DECREED that judgment is entered in favor of all defendants and against all plaintiffs in this cause of action.